OPINION
{¶ 1} The plaintiffs-appellants, Joyce Stephens, Paulette and Ronald Ottomeier, and Scott Stephens, appeal the February 22, 2006 Judgment of the Court of Common Pleas of Mercer County, Ohio granting summary judgment for defendant-appellee, Motorist Mutual Insurance Company ("MMIC").
 {¶ 2} On February 22, 2001, an automobile collision occurred between Richard Alan Stephens ("Richard") and Susan A. Norris ("Susan"). Richard was operating a 1989 Ford F-150 truck eastbound on Tama Road in Mercer County in the course and scope of his employment as a partner/principle in his business, A S Salvage, a scrap metal business. Susan was operating a 1993 Chevrolet van southbound on Erastus-Dublin Road when she failed to stop at a stop sign and failed to yield to the right of way and caused a collision between the vehicles. As a proximate cause of the collision, Richard died from the injuries sustained in the accident. At the time of the collision, Susan was an underinsured motorist and Richard was a co-owner of A S Salvage.
 {¶ 3} Richard was survived by his wife, Joyce Stephens, his mother and stepfather, Paulette and Ronald Ottomeier, and two brothers, Scott and Sean Stephens, who filed a complaint against Susan, National Union Fire Insurance Company, MMIC, Westfield Companies, Assisted Living Concepts Inc., and other Jane and/or John Does on October 18, 2002. Appellants sought a declaration of rights under various policies of insurance issued by A S Salvage and made survivorship and wrongful death claims against Appellees. Specifically with respect to this case, Appellants sought uninsured/underinsured motorist coverage under three coverage parts of the MMIC insurance contract: the commercial general liability coverage form, the business auto coverage form, and the commercial umbrella coverage form. On July 30, 2004, Appellants and MMIC filed cross-motions for summary judgment. Between August 2, 2004 and September 13, 2004, various motions and memoranda were filed in support of and in response to the motions for summary judgment. All Appellees settled or were dismissed from this case except MMIC.
 {¶ 4} On February 22, 2006, the trial court issued a judgment entry granting MMIC's motion for summary judgment as to all three coverage forms, concluding that the Appellants were not entitled to uninsured/underinsured motorist coverage under any of the coverages provided by the insurance contract.
 {¶ 5} On March 17, 2006, Appellants filed a notice of appeal raising the following assignments of error:
 First Assignment of Error THE TRIAL COURT ERRED IN GRANTING DEFENDANTA-PPELLEE'S MOTIONFOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS-APPELLANTS' MOTIONFOR SUMMARY JUDGMENT ON THE COMMERCIAL UMBRELLA POLICY UM/UIMPROVISIONS ISSUED BY THE DEFENDANT-APPELLEE AS IT DID NOT MAKE AVALID OFFER OF UM/UIM COVERAGE, NOR DID IT SECURE A VALIDREJECTION OF THOSE COVERAGES AND, THEREFORE, COVERAGE IS IMPOSEDAS A MATTER OF LAW.
 Second Assignment of Error THE TRIAL COURT ERRED IN GRANTING DEFENDANTA-PPELLEE'S MOTIONFOR SUMMARY JUDGMENT AND IN OVERRULING PLAINTIFF-APPELLANT'SMOTION FOR SUMMARY JUDGMENT BECAUSE THE DEFENDANT-APPELLEE FAILEDTO COMPLY WITH THE APPLICABLE VERSION OF R.C. 3937.18(J)(1)AND/OR BECAUSE ISSUES OF MATERIAL FACTS REMAIN TO BE LITIGATEDWITH REGARD TO THE INSURANCE COVERAGE AVAILABLE TO THEPLAINTIFFSA-PPELLANTS UNDER THE AUTO INSURANCE POLICY ISSUED BYTHE DEFENDANT-APPELLEES AND AS TO THE STATUS OF VEHICLE THEDECEDENT WAS OPERATING AT THE TIME OF HIS DEATH.
 Summary Judgment Standard {¶ 6} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R.56(C). Summary judgment is not proper unless reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Id. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the non-moving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 360.
 {¶ 7} The party moving for summary judgment bears the initial burden of identifying and providing the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. In addition, the moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once the moving party establishes that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence and set forth specific facts showing that there is still a genuine issue of fact for the trial. Civ.R.56(E).
 I. Coverage under the Insurance Contract {¶ 8} The insurance contract at issue in this case, Business Insurance Policy No. 33.229205-40E, was in effect from May 3, 2000 through May 3, 2001. A S Salvage initially obtained insurance with MMIC in 1999 with respect to three vehicles, including a 1989 Ford F-350 truck, a 1984 Ford F-150 truck, and a 1975 gooseneck trailer. Those same three vehicles were listed on the renewal policy in May of 2000. The MMIC Business Insurance Policy did not list the 1989 Ford F-150 truck driven by Richard in the collision in this case, as a vehicle covered by the policy.
 {¶ 9} When A S Salvage was originally formed, Richard drove the 1984 Ford F-150 and usually kept it at his home or at the work site. At some point in time, the brakes went out on the 1984 Ford F-150 and he apparently started driving his 1989 Ford F-150. On October 3, 2000, Richard transferred the 1989 Ford F-150 to A S Salvage. In mid-January 2001, Joyce Stephens, Richard's wife, cancelled the personal insurance of Richard on the 1989 Ford F-150 truck, which cancellation was effective on January 16, 2001. At the time of the collision, MMIC had not been notified of the transfer of title to the 1989 Ford F-150 truck from Richard to A S Salvage.
 {¶ 10} The Business Insurance Policy was comprised of various coverage parts, including the commercial general liability coverage form, the business auto coverage form, and the commercial umbrella coverage form. We shall address each of these three coverages under the MMIC business policy issued to A S Salvage separately.
 A. Commercial General Liability Coverage Form {¶ 11} The Commercial General Liability Coverage Form does not provide either automobile liability or underinsured motorists coverage. Specifically, the Commercial General Liability Coverage Form provides in Section I, Article A, paragraph 2, that:
This insurance does not apply to:
 * * *
 g. Aircraft, Auto or Watercraft
 "Bodily injury" or "property damage" arising out of theownership, maintenance, use or entrustment to others of anyaircraft, "auto" or watercraft owned or operated by or rented orloaned to any insured. Use includes operation and "loading andunloading."
 This exclusion does not apply to:
 * * *
 (3) parking an "auto" on, or on the ways next to, premises youown or rent, provided the "auto" is not owned by or rented orloaned to you or the insured; * * *.
The Commercial General Liability Coverage Form defines "auto" in Section V — Definitions, paragraph 2 as:
[a] land motor vehicle, trailer or semitrailer designed fortravel on public roads, including any attached machinery orequipment. But "auto" does not include "mobile equipment."
 {¶ 12} In this case, the 1989 Ford F-150 was a land motor vehicle designed for travel on public roads as required by the Commercial General Liability Coverage definition of "auto," under the policy and its exclusion. Furthermore, the 1989 Ford F-150 being driven by Richard at the time of the collision causing his death was in fact owned by the insured, A S Salvage, on February 22, 2001. As stated above, the Commercial General Liability Coverage does not apply to bodily injury arising out of the ownership of any auto owned or operated by any insured. The liability coverage for an insured is specifically provided only when an insured is parking an auto not owned, rented or leased to the business as incidental coverage which is as remote from and insignificant to the overall coverage provided by the policy. Therefore, Richard, a co-owner of A S Salvage, is not covered for driving the 1989 F-150 owned by A S Salvage under the Commercial General Liability Coverage Form.
 Business Auto Coverage Form {¶ 13} The Business Auto Coverage Form provides UM/UIM coverage for "covered autos," which are designated as "symbol 7" autos. "Symbol 7" autos are defined as "specifically described autos," which are "only those `autos' described in ITEM THREE of the [Business Auto Coverage Form] Declarations [page] for which a premium charge is shown." On the Declarations page, "ITEM THREE" refers to the Schedule of Covered Autos Form CA 7002. Form CA 7002 lists three autos: (1) a 1989 Ford F-350, (2) a 1984 Ford F-150, and (3) a 1975 gooseneck trailer.
 {¶ 14} The Business Auto Coverage Form provides the following requirements for coverage with respect to covered autos:
SECTION I — COVERED AUTOS
* * *
OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS
* * *
But, if symbol 7 is entered next to a coverage in ITEM TWO ofthe Declarations, an "auto" you acquire will be a covered "auto"for that coverage only if:
 a. We already cover all "autos" that you own for that coverageor it replaces an "auto" you previously owned that had thatcoverage; and
 b. You tell us within 30 days after you acquire it that youwant us to cover it for that coverage.
The Business Auto Coverage Form includes a UM/UIM coverage form which defines an "insured" as follows:
B. WHO IS AN INSURED
 1. If the Named Insured is designated in the Declaration as:
* * *
c. A partnership, limited liability company, corporation, orany other form of organization, then the following are"insureds":
 (1) The Named Insured's employees, partners (if the NamedInsured is a partnership) or members (if the Named Insured is alimited liability company) while occupying a covered "auto" or atemporary substitute for
 a covered "auto." The covered "auto" must be out of servicebecause of its breakdown, repair, servicing, loss ordestruction.
The UM/UIM coverage form expressly excludes coverage for bodily injury that is sustained by:
a. An insured while "occupying" or when struck by, any vehicleowned by any insured which is not a covered "auto."
 {¶ 15} In this case, it is an undisputed fact that the 1989 Ford F-150 truck driven by Richard at the time of the collision was not listed as a "covered auto" and that MMIC was never notified prior to the collision that A S Salvage had acquired the 1989 Ford F-150 on October 3, 2000. As stated above, the Business Auto Coverage Form, Section I — Covered Autos provides insurance if the insured acquires another "auto" as defined under the policy only if (1) the insurer already covers all of the "autos" that the insured owns or (2) the newly acquired auto replaces an auto the insured previously owned and the insured tells the insurer, MMIC, within 30 days after the insured acquires the vehicle that the insured wants MMIC to cover it for the business. There is no dispute that A S Salvage did not comply with the specific terms of this condition precedent to secure coverage under the Business Auto Coverage Form for the 1989 Ford F-150 truck Richard was driving at the time of the collision.
 {¶ 16} It is also clear that the evidence does not support a finding that the 1989 Ford F-150 truck Richard was driving on February 22, 2001 was a "temporary substitute" for the 1984 Ford F-150 truck. The evidence specifically establishes that the 1989 truck had been driven by Richard during the course of employment for two years prior to the collision and that the 1989 Ford F-150 truck had been transferred to A S Salvage on October 3, 2000. Thus, the 1989 Ford F-150 truck was a permanent or at least a long-term replacement for the 1984 truck. It was also acknowledged that A S Salvage was not using and no longer intended to use the 1984 Ford F-150 truck on public roads. A S Salvage should have notified MMIC within 30 days of the transfer to inform them of their interest to acquire coverage for the 1989 Ford F-150 truck. However, MMIC was not notified prior to the collision that A S Salvage had acquired a 1989 Ford F-150 and was not using the 1984 Ford F-150. Therefore, the 1989 Ford F-150 was not a covered auto under the Business Auto Coverage Form.
 {¶ 17} Furthermore, it is noted that since the ownership of the 1989 Ford F-150 was transferred from Richard to A S Salvage on October 3, 2000, it was also not a "non-owned" auto pursuant to the Business Auto Coverage Form. A "non-owned auto" includes an "`auto' owned by your employees or partners or members of their households but only while used in your business or your personal affairs." A "non-owned auto" pursuant to the Schedule of Covered Autos Form CA 7002 only covered liability, it did not cover uninsured motorists and underinsured motorists. Accordingly, the 1989 Ford F-150 was certainly not a "non-owned" auto for which coverage had been provided under the policy prior to the transfer of title from Richard to A S Salvage.
 Commercial Umbrella Coverage Form {¶ 18} The Commercial Umbrella Coverage Form provides the following with respect to granting coverage:
SECTION I — COVERAGES
 A. Insuring Agreement
 We will pay on behalf of the insured the "ultimate net loss:"
 a. In excess of the "underlying limit:" or
 b. For an "occurrence" covered by this policy which is eitherexcluded or not covered by the "underlying insurance."
The Commercial Umbrella Coverage Form includes the following definitions:
SECTION VI — DEFINITIONS
* * *
M. "Underlying insurance" means policies listed in theSchedule of Underlying Insurance and other policies available tothe insured applicable to the "occurrence."
 N. "Underlying limit" means the total of the applicable limitsof all "underlying insurance" less the amount, if any, by whichthe applicable aggregate limit of the applicable policy listed inthe Schedule of Underlying Insurance has been reduced solely bypayment of loss for "occurrences" during the policy period.
Furthermore, the Commercial Umbrella Coverage Form specifically excludes coverage for UM/UIM benefits as follows:
SECTION I — COVERAGES
* * *
B. Exclusions.
 This insurance does not apply to:
* * *
q. Any claim for Uninsured or Underinsured Motorist Coverage,unless coverage is available to the insured under the "underlyinginsurance" listed in the Schedule of Underlying Insurance atlimits equal to the Auto Limit of Liability.
The Schedule of Underlying Coverages includes the Commercial General Liability Coverage Form and the Business Auto Coverage Form.
 {¶ 19} The Commercial Umbrella Coverage Form expressly states that UM/UIM coverage is available provided that the claimed loss is covered under the UM/UIM coverage of the underlying policies. In this case, Richard was not entitled to UM/UIM coverage under the Commercial Umbrella Coverage Form because there was no UM/UIM coverage for his collision under either the Commercial General Liability Coverage Form or the Business Auto Coverage Form. Moreover, A S Salvage was issued an umbrella policy of insurance by MMIC that included an Amendment of Policy Provisions which states that "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Since the policy expressly provides for UM/UIM coverage, it is clear that the insurer offered and the insured accepted such coverage. By doing so, the Commercial Umbrella Coverage Form includes UM/UIM coverage by contract, thus any exclusions or restrictions are applicable.
 {¶ 20} Upon review of the record, we find that the trial court did not err in granting MMIC's Motion for Summary Judgment by finding that "reasonable minds can only conclude [that] the policy of insurance issued by MMIC to A S Salvage does not provide uninsured motorists coverage for the wrongful death of [Richard] Al Stephens, * * * which occurred on February 22, 2001, under the CGL [Commercial General Liability Coverage], business auto or commercial umbrella portions policy number 33.229205-40E issued by it * * * for their partnership A S Salvage." Therefore, Appellant's first assignment of error is overruled.
 II. Coverage under R.C. 3837.18(J)(1) {¶ 21} Pursuant to R.C. 3937.18(J), S.B. 267 version (effective Sept. 21, 2000),
The coverages offered * * * may include terms and conditionsthat preclude coverage for bodily injury or death suffered by aninsured under any of the following circumstances:
 (1) While the insured is operating or occupying a motorvehicle owned by, furnished to, or available for the regular useof a named insured, a spouse, or a resident relative of a namedinsured, if the motor vehicle is not specifically identified inthe policy under which a claim is made, or is not a newlyacquired or replacement motor vehicle covered under the terms ofthe policy under which the uninsured and underinsured motoristcoverages are provided; * * *.
The statutory language of R.C. 3937.18(J) permits insurers to use terms and conditions that limit UM/UIM coverage to autos specifically identified in the policy. The statute further allows insurers to limit UM/UIM coverage for autos that do not constitute "newly acquired" or "replacement" autos as defined by the policy. The statute does not require insurers to identically match the statute word-for-word to their policies.
 {¶ 22} As stated above, the MMIC policy expressly states that an insured can have coverage for after acquired autos, and sets forth how an insured can arrange such coverage under the Business Auto Coverage Form. The MMIC policy also clearly describes under what circumstances UM/UIM coverage is available for "temporary substitute" autos under the Business Auto Coverage Form.
 {¶ 23} The terms and conditions set forth in the Business Auto Coverage Form are permissible under the former UM/UIM statute, R.C. 3937.18(J)(1). Moreover, the terms and conditions of the Business Auto Coverage Form were not followed in this case. Specifically, the 1989 Ford F-150 driven by Richard at the time of the collision was not listed as a "covered auto" under the policy and MMIC was never notified prior to the collision that A S Salvage had acquired the 1989 Ford F-150 on October 3, 2000. Furthermore, the 1989 Ford F-150 could not be deemed to be a "temporary substitute" for the 1984 Ford F-150 because Richard had been driving the 1989 truck during the course of employment for two years prior to the collision, the truck had been transferred to A S Salvage, and A S Salvage did not inform MMIC of the "replacement" within 30 days.
 {¶ 24} Upon review of the record, we find that the trial court did not err in granting MMIC Motion for Summary Judgment because MMIC did not fail to comply with the applicable version of R.C. 3937.18(J)(1). Furthermore, the trial court did not err in granting MMIC Motion for Summary Judgment based on issues of material fact remaining to be litigated with regard to the insurance coverage available to the Appellants under the Business Auto Coverage Form issued by MMIC and as to the status of the auto Richard was operating at the time of the collision. Therefore, Appellant's second assignment of error is overruled. Accordingly, the February 22, 2006 Judgment of the Court of Common Pleas of Mercer County, Ohio granting summary judgment for MMIC is affirmed.
Judgment affirmed.
 Bryant, P.J., and Rogers, J., concur.